**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| RON LESLIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MID-AMERICA APARTMENT | ) | CIVIL ACTION FILE NO. |
| COMMUNITIES | ) | |
| | ) | _____ |
| AND | ) | |
| | ) | |
| CHERI WELLS | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

COMES NOW, Ron Leslie, and respectfully shows the Court as follows:

This is an action for legal and equitable relief to redress discrimination in housing on the basis of disability. This action arises under The Fair Housing Act, 42 U.S.C. § 361, et seq.

2.

This court has jurisdiction of this action.

3.

Plaintiff, is a natural person with disabilities as defined in 42 U.S.C. § 3662(h), whose disability substantially limits one or more major life activities. Specifically, he suffers from several medical conditions inter alia which impacts

1

his ability to care for himself, to perform manual tasks, to see, to hear, to eat, sleep, walk, stand, or lift.

4.

Plaintiff, is a natural person with disabilities as defined in 42 U.S.C. § 3662(h), whose disabilities impair his ability to complete tasks and meetings by telephone. Communications by mail or email accommodate his impairment.

5.

Plaintiff is a natural person living in Georgia who attempted to rent an apartment from the defendant for personal family and household purposes. This apartment is located at High Rise at Post Alexander, 600 Phipps Boulevard, Atlanta, GA 30326.

6.

Defendant MID-AMERICA APARTMENT COMMUNITIES, INC. is a foreign limited liability company based in Germantown, TN.  This defendant regularly does business in the Northern District of Georgia, and is subject to the jurisdiction of this Court.  At the time of filing this complaint, defendant was the owner of High Rise at Post Alexander.

7.

Defendant Cheri Wells is an agent for said defendant and a resident of the Northern District of Georgia and is subject to the jurisdiction of the Court.

8.

Defendants knew and knows of plaintiff's disabilities as plaintiff has made

known the same to the agents of both defendants.

9.

Defendants took adverse actions against plaintiff because of his disability.

10.

The actions of the defendants as set forth herein violated 42 U.S.C. §

3604f(1)(B).

11.

Defendants took the adverse action set out in paragraphs 12 to 46 below.

12.

On June 4, 2020, plaintiff Ron Leslie, visited Post Alexander to tour an

apartment. He was assigned Leasing Consultant, Brittney Richards who showed

him unit #2509. She offered him 8 weeks free if he applied in June 2020.

13.

On June 9, 2020, he applied for unit #2509 through Leasing Consultant,

Brittney Richards.

14.

On June 10, 2020, he attempted to call the office several times, but he could

not reach anyone.  He emailed Leasing Consultant, Brittney Richards. His name

had been switched from the unit he had applied for from #2509 to #2209.

Additionally, the unit was not available when he needed to move in June 2020.

The earliest unit #2209 was available August 2020.  He submitted a request to

correct the error and put him back on the unit he wanted which was #2509.

15.

On June 10, 2020, he applied for an apartment at the High Rise at Post

Alexander again online.

16.

On June 10, 2020, he was sent a request to Verify My Identity, and the

verification was completed.

17.

On June 11, 2020, he faxed his employment offer letter to the High Rise at

Post Alexander as requested from leasing consultant Lyssa Hubbard. He received a

fax confirmation that it had been received by the defendants.

18.

On June 12, 2020, he visited the High Rise at Post Alexander to tour an

alternative apartment #2508, which was available for a June move in instead of

August. He requested a reasonable accommodation to move in June 30, 2020. He

also requested communications via email due to his condition.

19.

4

On June 12, 2020, the High Rise at Post Alexander ran his credit without his authorization.  As a result, his identity was stolen and exchanged on a black market website per My FICO Surveillance.

20.

On June 14, 2020, he visited Post Alexander to confirm that he would receive an offer of 2 months free off apartment #2508. He reconfirmed his move in date for June 30, 2020. He receive an apology for being removed from #2209 which was scheduled for an August 15, 2020 move in.

21.

On June 15, 2020, assistant manager Lori Thibodeau confirmed his ID VERIFICATION had been received by Post Alexander.

22.

On June 15, 2020, property manager Alyson Holcomb confirmed his approval for apartment #2508.

23.

On June 16, 2020, he received an email from Regional Leasing Consultant Cheri Wells requesting his move in date. Plaintiff informed her that his grandmother just passed, and Plaintiff would have a little difficulty communicating with the office during that time.

24.

On June 17, 2020, he received an email from Regional Leasing Consultant Cheri Wells, changing his move in date to June 26, 2020. Although he had already been approved for a move in date of June 30, 2020, such date was needed to accommodate Plaintiff's medical condition and afford him time to move out by current lease end.

25.

On June 22, 2020, Plaintiff received a voice mail message from Cheri Wells requesting documents for his application.

26.

On June 22, 2020, Plaintiff received an email from Cheri Wells requesting two pay stubs.

27.

On June 23, 2020, once Ms. Wells received the fax confirmation for Plaintiff's income verification and his request for a reasonable accommodation, Defendants then told him he had to be screened again. Then, Defendants requested he lift the security freeze on his credit report for a 3rd time.

28.

On June 23, 2020, plaintiff contacted Experian to lift the security freeze on his credit reports, leaving his reports exposed for two days to allow Mrs. Wells to pull his credit. He contacted the office via phone to make them aware.

29.

On June 24, 2020, he attempted to call the office but he could not reach anyone.

30.

On June 25, 2020, Ms. Wells contacted him again requesting to lift the security freeze, even though the security freeze had been lifted. In addition, Plaintiff had left a voicemail regarding the same.

31.

On June 25, 2020, Plaintiff requested a reasonable accommodation again and informed Ms. Wells that he wanted to avoid identity theft.

32.

On June 25, 2020, less than 15 hours before Plaintiff was scheduled to move into #2508, Mrs. Wells canceled his application via email.  He wasn't given a phone call before this decision.  He wasn't given a request for more information nor documentation. He wasn't given any notice of a due date and time at which all of Plaintiff's required documents were due.

33.

On June 25, 2020, in a panic, plaintiff attempted to call the office to speak with Ms. Wells to remedy any issues regarding his move in.  She refused to answer.

34.

On June 25, 2020, plaintiff immediately responded to Ms. Wells' email requesting the name and email address of a Property Manager that could help him. Ms. Wells never responded.

35.

Defendants by and through its agents refused to honor the bonafide offer of a 14 month lease agreement including a move in special of 2 months off that was made to him.

36.

Defendants refused to disclose apartment availability, or any services or promotions regarding alternative lease terms which are being offered to other prospective applicants and current tenants.

37.

Defendants by cancelling the plaintiff's residential application, made it more difficult and has prolonged the process of the plaintiff finding a new place to live.

38.

The plaintiff has a disability which makes him unable to reliably attend scheduled meetings outside his home.  Traveling outside his home to attend meetings worsens his symptoms.  Being a medically fragile person, the threat of Covid-19 intensifies these symptoms.  In addition, his symptoms and functioning varies by day and he is unable to reliably schedule meetings at set times.

39.

Additionally, the plaintiff has a disability which impairs his cognitive functioning.  In order to complete tasks, he requires additional processing time and frequent breaks.  His disabilities limit his ability to process information or complete tasks within a limited time frame or during a meeting. Attending frequent in-person meetings would not accommodate his disability needs.

40.

Plaintiff had an obligation to his then current landlord to move out of his current apartment as of lease end. This move out was planned by June 30, 2020 as his current apartment has been "pre-leased" to a future tenant.

41.

The obligations of the plaintiff under his lease agreement with his current landlord includes a provision which addresses "Holding Over".

42.

According to this lease, since holding over has occurred, the plaintiff is required to pay 25% over the existing rent, and is liable for all rent for the full term of the previously signed lease contract of the new resident who can't occupy because of the hold over.

43.

If the defendant had not cancelled his application unjustly, he would have been able to fulfill his current lease requirement and move out by June 30, 2020. Because of this, plaintiff has been damaged in the amount of $21,367.50.

44.

Because the plaintiff's apartment is pre-leased, and he cannot physically move out timely because of his disability, he became responsible for this new tenant's lease according to the agreement.

45.

It is the intentional and willful acts of the defendant that have damaged the plaintiff.

46.

Defendants violated 42 U.S.C. § 3604(f)(2) as set out herein by placing conditions on plaintiff solely because of his disabilities that were not placed on other residents.

47.

Plaintiff on numerous times requested accommodations for his disability.

48.

These requests for a reasonable accommodations would not impose a

financial or administrative burden on the defendant.

49.

Each of the requested accommodations was necessary to afford the plaintiff

an opportunity to use and enjoy living in the apartment complex.

50.

At all times Defendants refused to make the accommodation.

51.

Defendants violated plaintiff's rights under the Fair Housing Act _____ and

by and through their agents acting within the scope and course of their employer.

52.

The actions of defendants were willfully and/or in reckless disregard of

plaintiff's rights under 42 U.S.C. § 3604f(1) and defendants are liable to plaintiff

in the amount of $100,000 in punitive damages pursuant to 42 U.S.C. § 3613(c)(1).

53.

Plaintiff is entitled to reasonable attorney fees pursuant to 42 U.S.C. §

3613(c)(2).

COUNT TWO

54.

Paragraphs 1-45 and 47-590 are realleged as though fully set out.

55.

As a proximate result of Defendants' actions or those of Defendants' agents

acting on the course and scope of their employment, Plaintiff suffered damages in

the amount of $228,977.50 general and special.

56.

Defendants; actions were taken willfully and/or in reckless disregard of

Plaintiff's rights and Defendants are liable to Plaintiff in punitive damages.

57.

Plaintiff is entitled to reasonable attorney fees.

COUNT THREE

58.

Paragraphs 1-45 and 47-50 are realleged as though fully set out.

59.

Plaintiff is a natural person living in Georgia who rented an apartment from

Defendant for personal, family, and household purposes. Defendant Wells was part

of the application process. Each Defendant acted through agents and/or _____/

The agents were working within the course and scope of their employment.

12

61.

The violations of the Fair Housing Act and its Georgia counterpart were per se violations of the Georgia Fair Business Practices Act.

62.

As a proximate result, Plaintiff was damaged in the amount of $228,975 50.

63

The damages should be trebled because of Defendant's intentional misconduct.

64.

Plaintiff is entitled to punitive damages of $100,000 because of Defendant's intentional misconduct.

65.

Plaintiff is entitled to reasonable attorney fees.

WHEREFORE, Plaintiff prays,

1. For judgment in the amount set out above;

2. For attorney fees and costs;

3. For jury trial; and

4. For such other and further relief as is just and proper

Respectfully submitted,

/s/ Ralph Goldberg
Ralph Goldberg
Georgia Bar No. 299475
Attorney for Plaintiff

**Goldberg & Cuvillier, P.C.**
3469 Lawrenceville Hwy., Suite 102
Tucker, GA 30084
(770) 670-7343
(770) 670-7344 FAX
attorneygoldberg@hotmail.com

14